IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BENJAMIN MORI,

               Petitioner,           Civil No. 05-1146-CO

                   v.              FINDINGS AND
                                  RECOMMENDATION
CHARLES DANIELS,

               Respondent.

COONEY, Magistrate Judge.

Petitioner, a federal inmate currently confined in the Federal Prison Camp at Sheridan, Oregon (FPC Sheridan) filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241 alleging that the Bureau of Prisons (BOP) is wrongfully denying him consideration for placement into a Community Corrections Center (CCC) prior to the last 10% of his sentence. Petitioner relies primarily upon Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004) in support of his claim that the

1 - FINDINGS AND RECOMMENDATION

BOP's action denies him due process or equal protection.

Respondent contends that pursuant to newly-established BOP regulations inmates are considered for transfer to community facilities for confinement only during the last 10% of their sentence, and in no instance exceeding six months. These regulations interpret the BOP's statutory mandate regarding determining place of imprisonment for federal prisoners and reflect a change from a decades-long BOP policy that considered evaluating prisoner's suitability for community confinement to be appropriate at any point of a prisoner's incarceration, with the BOP typically considering CCC placement for the final six months of any period of imprisonment.

Background:

Petitioner is serving a 21-month sentence following his conviction in the District of Oregon for providing a false statement during the acquisition of a firearm. He began serving his sentence at FPC Sheridan on October 15, 2004. Petitioner's current release date is April 22, 2006, and the BOP has determined that he is eligible for transfer to a CCC on February 27, 2006, 40-60 days prior to his release date. See, Response to Petition (#9) p. 2 and Angus Declaration (#10) at 1-2, Ex. A. As set forth in the Declaration of Karen Angus, petitioner was given two CCC reviews and his transfer

date was determined giving consideration to the factors set forth in 18 U.S. § 3621(b) and Program Statement 7310.04. Angus Declaration (#11), Ex. C and D. Under applicable regulations as interpreted by the BOP, an inmate is not eligible tor CCC consideration until the final 10% or six months of his sentence, whichever is less. Angus Declaration at p. 1-2.

Petitioner contends that under a proper interpretation of the relevant statutes and previous BOP policy he is eligible for 6 months of CCC placement on October 22, 2005.

Exhaustion of Remedies:

Federal prisoners must exhaust their federal administrative remedies prior to filing a habeas corpus petition. Martinex v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); see also, Fendler v. United States Parole Com'n, 774 F.2d 975, 979 (9th Cir. 1985). However, the exhaustion requirement is not jurisdictional in § 2241 cases. Rivera v. Ashcroft, 394 F.3d 1129, 1139 (9th Cir. 2005). "Exhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, where the pursuit of them would irreparably injure the plaintiff, or where the administrative themselves are void." United Farm Workers of America v. Arizona Agr. Emp. Rel. Bd, 669 F.2d 1249, 1253 (9th Cir. 1982); See also, Fraley v. United States Bureau of

<u>Prisons</u>, 1 F.3d 924, 925 (9th Cir. 1993).

The record before the court establishes that exhaustion of administrative remedies in this case would be futile. By the time petitioner exhausts available administrative remedies, his claim may be rendered moot by his transfer to a CCC on February 27, 2006, (eligibility date). Moreover, it is clear that petitioner's claim would be rejected based on official policy as applied at FPC Sheridan. Accordingly, the exhaustion of administrative remedies requirement should be excused.

<u>Due Process Claim:</u>

Petitioner's claims arise from a change in the BOP's interpretation of 18 U.S.C. §§ 3621(b) and 3624(c). Section 3621(b) provides:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;

4 - FINDINGS AND RECOMMENDATION

(4) any statement by the court that imposed the sentence--

    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

    (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another....

18 U.S.C. § 3621.

Section 3624(c) provides:

(c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624.

Prior to December 2002, the BOP interpreted these statutes to allow inmates to serve any or all of their terms of imprisonment in CCCs. Under this interpretation, the BOP

had a long-standing policy of transferring prisoners to CCCs to serve the remainder of their sentences, up to 180 days, in an attempt to facilitate successful transition into the community.

On December 20, 2002, the BOP's Office of Legal Counsel concluded that this decades-long policy was wrong, and that Section 3624(c) limited the discretion granted by Section 3621(b). The Office of Legal Counsel decided the maximum period of time a prisoner can serve his sentence in a CCC in connection with pre-release programming is the lesser of six months or ten percent of the inmate's sentence after the deduction of good time credits.[1]

Effective February 14, 2005, the BOP adopted an administrative regulation codifying the December 2002 policy statement at 28 C.F.R. § 570.20, which provides:

> (a)  This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will

---

[1]  The policy change was based in large part on the Office of Legal Counsel's determination that a CCC is not a "place ... of imprisonment" as required by the first sentence of § 3621(b). This determination was in turn based upon language contained in § 5C1.1 of the United States Sentencing Guidelines, interpreted by courts to exclude CCCs as a "place of imprisonment." The court notes without deciding whether the Supreme Court's recent case holding mandatory application of the Sentencing Guidelines unconstitutional might vitiate the underlying basis for the policy and rule change. See United States v. Booker, 125 S.Ct. 738, 759 (2005).

> afford the prisoner a reasonable opportunity
> to adjust to and prepare for re-entry into the
> community.
>
> (b)     As discussed in this subpart, the term
>         "community confinement" includes Community
>         Corrections Centers (CCC) (also known as
>         "halfway houses") and home confinement.

A companion rule, 28 U.S.C. § 570.21, provides:

> (a)     The Bureau will designate inmates to community
>         confinement only as part of pre-release
>         custody and programming, during the last ten
>         percent of the prison sentence being served,
>         not to exceed six months.
>
> (b)     We may exceed these time-frames only when
>         specific Bureau programs allow greater periods
>         of community confinement, as provided by
>         separate statutory authority (for example,
>         residential substance abuse treatment program
>         (18 U.S.C. § 3621(e)(2)(A)), or shock
>         incarceration program (18 U.S.C. § 4046(c))).

The December 2002 change in policy spawned numerous legal

challenges from inmates who previously would have been

eligible for CCC placement at any time during their

incarceration, including the last six months.  See Pinto v.

Menifee, 2004 WL 3019760 (S.D.N.Y. December 29, 2004) (summary

of cases); Franceski v. Bureau of Prisons, 2005 WL 821703

(S.D.N.Y. April 8, 2005) (updated summary of conflicting case

law); see also, Bialostok v Apker, 2005 WL 1946480 (S.D.N.Y.

August 12, 2005); Lee v. United States, 2005 WL 2179796 (S.D.

Ala. September 6, 2005).

Two circuit courts have addressed the merits of the

December 2002 policy change, both invalidating the new policy

on the grounds that BOP's interpretation of the statutes is erroneous.  See Elwood v. Jeter, 386 F.3d 842, 846-47 (8th Cir. 2004) (holding BOP had discretion to transfer prisoners to community confinement at any time during their incarceration); Goldings v. Winn, 383 F.3d 17, 23-27 (1st Cir. 2004) (holding that § 3624(c) does not prohibit the BOP from transferring prisoners to a CCC prior to the lesser of six months or ten percent of the end of their prison terms, and that § 3621(b) confers upon BOP discretionary authority to execute such transfers).

In Cook v. Gonzales, 2005 WL 773956 (D. Or. April 5, 2005) and Haskey v. Daniels, CV 05-249-AS (Opinion and Order, April 22, 2005), Judge Ashmanskas, relying upon Goldings and Elwood, held that the new BOP regulations are invalid. Subsequently, Judge Coffin issued an decision following Judge Ashmanskas' ruling on similar grounds.  Weiderhorn v. Gonzales, 2005 WL 1113833 (D. Or. May 9, 2005).  Both courts ordered the BOP to exercise its discretion in these individual cases to determine if CCC placement prior to the final 10% of the inmates sentence was appropriate.  To date, the Ninth Circuit Court of Appeals has not addressed the merits of the policy change.

Respondent contends that "[s]ince Judge Ashmanskas issued his opinion in Cook, several other district courts have held

that the BOP's 2005 regulations are a valid, categorical exercise of discretion under the Supreme Court's decision in Lopez v. Davis, 531 U.S. 230 (2001). (citations omitted) Judge Ashmanskas was not presented with nor did he address application of the Lopez decision to the validity of the February 2005 regulations, 28 C.F.R. § 570.20-21." Response to Petition (#9) p. 5-6.

In United States v. Lopez, 531 U.S. 230, 234 (2001), the Supreme Court held that the BOP regulation that categorically excluded an inmate who used a firearm in connection with his offense from an early release program was a valid exercise of the BOP's authority. In a nutshell, the Court held that the policy of excluding persons convicted of crimes of violence from early release was lawful because the power to deny participation case-by-case implies a power to exercise discretion categorically and establish a rule that affects all situations.

Respondent's analysis of the issue before the court in terms of the Lopez decision is persuasive - but not quite convincing. Principles of statutory construction notwithstanding, I find that there is a distinction between a categorical exclusion based on the underlying offense and a general exclusion based on the remaining length of sentence. The former is based on a factor explicitly required to be

considered under § 3621(b)(2) - "the nature and circumstances of the underlying offense."  The categorical exclusion from CCC placement consideration based on the length of sentencing is not a exercise of discretion based on the factors set forth in § 36212(b).

As noted by the court in <u>Drew v. Menifee</u>, 2005 WL 525449 (S.D.N.Y. March 4, 2005):

> With respect to the possibility of placement in a CCC prior to the last ten per cent or six months of the prisoner's sentence, the [new] Rule simply posits a uniform rule that entirely ignores Section 3621(b)'s command.  No consideration is given to the prisoner's offense of conviction, the prisoner's history and characteristics or any of the other factors identified in the statute.

Although there is a split among the districts, both circuit courts as well as the other cases within the District of Oregon that have examined the question have found the regulations at issue in this case to be invalid.  As held by these courts, 18 U.S.C § 3624(c) only limits the affirmative obligation of the BOP to assure that a prisoner spends the last part of his sentence under pre-release conditions but does not limit the agency's discretionary authority to place a prisoner in a CCC  at any other time during the prisoner's sentence.  Thus § 3624(c) places a six-month cap on the period of time for which the BOP <u>must</u> designate an offender to a less restrictive facility, as opposed to limiting the period of time for which the BOP <u>may</u> designate an offender to a CCC.

10 - FINDINGS AND RECOMMENDATION

While § 3624(c) limits the BOP's discretion <u>not</u> to consider community confinement or other pre-release alternatives, it does not prohibit the BOP from doing so earlier pursuant to § 3621(b), which grants the BOP discretionary authority to choose an appropriate place of confinement form among "any available penal or correctional facility" - which would include community correctional facilities.[2]

The courts granting relief from application of the new policy and/or new regulations uniformly agree an inmate's immediate designation to a CCC is not mandated. <u>See</u>, <u>e.g.</u>, <u>Cook</u>, <u>Haskey</u> and <u>Weiderhorn</u>, <u>supra.</u> Instead, the appropriate remedy is to order respondent to consider the appropriateness of transferring an inmate to a community confinement center in light of the factors set forth in § 3621(b) and another factors deemed appropriate by the BOP, without reference to either the December 2002 policy or 28 C.F.R. § 570.21. <u>Id</u>.[3]

<u>Conclusion</u>:

I agree with the First and Eighth Circuits and with

---

[2]Program Statement No. 7310.02 (1993) states that CCCs meet § 3621(b)'s definition of penal or correctional facility. <u>See also</u>, <u>Weiderhorn</u>, <u>supra</u> at p. 5.

[3]Petitioner in this case "prays the court to order the BOP to withdraw its current eligibility date of February 27, 2006 and order the BOP to reconsider the Petitioner's CCC eligibility date in good faith, based on factors <u>prior</u> to the new policy change in December 2002." Memorandum in Support (#5) p. 9.

11 - FINDINGS AND RECOMMENDATION

Judges Ashmanskas and Coffin of this court that the new BOP regulations are invalid. Because I find that petitioner is entitled to relief for the reasons set forth above, it is not necessary to address petitioner's equal protection argument.

Petitioner's Petition for Writ of Habeas Corpus should be granted to the extent that respondent should be ordered to consider the appropriateness of petitioner's imprisonment in light of the factors set forth in 18 U.S.C. § 3621(b), and without consideration of either the 2002 OLC Memorandum Opinion or 28 C.F.R. 570.21. This review should take place as soon as is reasonably practicable, and no longer than 10 days after the court's order concerning this Findings and Recommendation, if appropriate.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a

waiver of a party's right to <u>de</u> <u>novo</u> consideration of the factual issues and will constitutes a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___ day of January, 2006.

                     _____

                     John P. Cooney
                     United States Magistrate Judge